**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **KEITH DEWAYNE WILLIAMS,** ) | |
| ID # 1809990, ) | |
| Petitioner, ) | |
| vs. ) | No. 3:15-CV-331-M (BH) |
| ) | |
| **LORIE DAVIS,**[1] **Director,** ) | Referred to U.S. Magistrate Judge |
| **Texas Department of Criminal** ) | |
| **Justice, Correctional Institutions Division,** ) | |
| Respondent. ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order 3-251*, this habeas case has been referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the petition for writ of habeas corpus under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**I. BACKGROUND**

Keith Dewayne Williams (Petitioner) challenges his conviction for aggravated sexual assault of a disabled person in Cause No. F12-00221. The respondent is Lorie Davis, Director of TDCJ-CID (Respondent).

**A.    Trial and Appeal**

On February 15, 2012, the State indicted Petitioner for aggravated sexual assault of a disabled person. (Doc. 16-2 at 7.)[2] He pleaded not guilty and was tried before a jury in Criminal District Court No. 3 of Dallas County, Texas, on June 25, 2012 – June 27, 2012. (Doc. 16-2 at 33.)

The evidence at trial was summarized by the state appellate court as follows:

---

[1] Lorie Davis succeeded William Stephens as Director of the Correctional Institutions Division of the Texas Department of Criminal Justice. Under Rule 25(d) of the Federal Rules of Civil Procedure, she "is automatically substituted as a party."

[2] Page citations refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

Lisa White is the mother of the complainant, twenty-five year old Rita, and four other children. Rita was diagnosed with mild mental retardation when she was four to five years old. Rita and three of White's other children lived with White at the time of the offense. One of these children, Anita, is Rita's guardian. Anita is unable to work because she cares for Rita twenty-four hours a day. Rita cannot be left alone, and she gets lost when she leaves the house. She does not drive, and is unable to work. Rita plays sports with Special Olympics, and attends activities with other children with similar mental abilities. White explained that Rita attended special-needs classes in high school and received services from MetroCare for ten years. MetroCare helped teach Rita how to live, and showed White a different approach to teaching Rita than she used with her other children because Rita is "different or special."

White became acquainted with appellant when Rita was ten or eleven years old, and then did not see him again for four or five years. When they became reacquainted, the relationship eventually turned romantic and White and appellant began dating. Appellant would occasionally stay at White's house. On these occasions, Rita and Anita were around. White, appellant, and the children would engage in family activities, such as watching movies and bowling.

In March 2011, White was out of town for five to six days chaperoning an event for one of her other daughters. Anita remained home to care for Rita. Appellant was not authorized to stay at White's home, but she did allow him to use the car to attend a job interview. Appellant was also supposed to check on the children in case they needed to go to the grocery store. At about 5:00 a.m. on the morning she was scheduled to arrive home, White received a "weird" text message from appellant that stated "Are you gonna press charges on me?" White did not understand, so she attempted to call appellant, but she was unable to reach him.

Appellant was supposed to pick White up from the airport when she arrived home, but White could not locate him. Appellant called her later, and he and White had dinner and then went out. When White arrived home later that night, Rita told her that she needed to talk to her, and revealed what had transpired with appellant. White was angry and frustrated, and contacted a couple of hospitals that told her they did not handle rape cases. By that time, she was tired, and went to bed. The next morning, White took Rita to Parkland hospital.

Rita testified at trial. She described an occasion when she and appellant walked to the park and appellant pulled her pants down and then pulled his pants down. Rita stated that appellant "was on top of [her]." His private part touched the outside of her private part, and it touched the inside of her private part. Rita testified that it hurt. Then, they walked home and Rita took a shower because that is what appellant told her to do.

2

> Rita described another occasion when she and appellant were at her house on the bed in her mother's room. Appellant pulled her pants down and "put a condoms on," and they "had sex in that room." Rita testified that she did not say anything while this was happening, and she did not want it to happen. When asked to describe the meaning of the word "sex," Rita explained that it is when private parts rub together. She further testified that sex is what occurred in her mother's bedroom that day, and appellant put his penis in her private part. Her mother was in Florida at the time.
>
> Officer Glenn Lang interviewed Rita at the hospital. Rita was with Anita and her mother, and was crying and distraught. Rita was shy, quiet, and difficult to understand. Lang reported that she mumbled, and he had to get her to repeat things he did not understand. Lang testified that Rita "did not seem quite right like she was all there."
>
> White did not speak with appellant after she took Rita to the hospital, but he tried to contact her by text and telephone on numerous occasions. The State also introduced into evidence two letters that appellant wrote to White. One letter stated, in pertinent part, "I just made a wrongful decision getting involved with Rita, whether we had sex or not." The letter subsequently stated, "Now, I do understand that what we did was morally wrong ... but you were hardly there whenever I were at home ... I do want you to know that I never wanted any involvement to happen, but things just started happening, but I never forced anyone to do anything with me that they would or won't do ... I wanted you to pay more attention to me." The second letter said, among other things, "I'm very, very sorry for what happened between me and Rita."
>
> An investigator for the Dallas County District Attorney's office testified he obtained jail calls appellant made from the jail. Portions of these calls were played for the jury. In these calls, appellant describes Rita as a "mental slow person" and as having a "mental state." Appellant also admits to engaging in some "foreplay" with Rita. He insists his conduct with Rita was not criminal because "she ain't in a wheelchair ... [with] tubes hanging out her butt."
>
> A special education director from the school Rita attended testified that Rita was placed in modified courses, and her curriculum was lowered to be commensurate with her functioning level. Rita's IQ is 53, which is considered a "deficient range."

*Williams v. State*, No. 05-12-00930-CR, 2014 WL 1010074 at 1-2 (Tex. App. – Dallas Feb. 14, 2014).

The jury convicted Petitioner, and the trial court sentenced him to 25 years' imprisonment. (Doc. 16-2 at 29.) The judgment was affirmed on appeal. *Williams v. State*, 2014 WL 1010074.

3

The Texas Court of Criminal Appeals refused the petition for discretionary review. *Williams v. State*, PD-0305-14 (Tex. Crim. App. Apr. 30, 2014).

**B.      State Habeas Proceedings**

Petitioner's first state habeas application, signed on May 5, 2014, was received by the state court on May 18, 2014. (Doc. 17-6 at 5, 21.) The application was dismissed because the mandate had not issued, and the conviction was not final at the time the application was filed. (Doc. 17-4); *see Ex parte Williams*, WR-81,611-01 (Tex. Crim. App. July 16, 2014).

Petitioner's second state habeas application, signed on August 13, 2014, was received by the state court on September 3, 2014. (Doc. 17-10 at 5, 21.) On October 24, 2014, the state habeas court issued findings of fact and conclusions of law. (*Id*. at 97.) On November 26, 2014, the state habeas application was denied without written order. (Doc. 17-7); *see Ex parte Williams*, WR-81,611-02 (Tex. Crim. App. Nov. 26, 2014).

Petitioner's third state habeas application, signed on February 22, 2015, was received by the state court on March 4, 2015. (Doc. 17-12 at 4, 20.) On April 29, 2015, the application was dismissed as a subsequent application under Tex. Code Crim. Proc. art. 11.07, § 4(a)-(c). (Doc. 17-11); *see Ex parte Williams*, WR-81,611-03 (Tex. Crim. App. Apr. 29, 2015).

**B.      Substantive Claims**

Petitioner's federal habeas petition and memorandum of law, received on February 3, 2015, raise the following grounds of ineffective assistance of counsel for failure to:

(1) impeach the complainant after she committed perjury;

(2) subpoena the complainant's sister;

(3) have a defense strategy;

  (4) subpoena an expert;

  (5) request a more recent evaluation of the complainant;

  (6) object to testimony from the complainant and her mother;

  (7) present exculpatory Facebook evidence; and

  (8) subpoena tapes of Detective Lopez's interrogation of Petitioner.

(Doc. 3 at 6; doc. 4.) Respondent filed a response on August 5, 2015. (Doc. 22.) Petitioner filed a reply on October 14, 2015. (Doc. 23.)

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because Petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

5

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). As for the "unreasonable application" standard, a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III. EXHAUSTION/PROCEDURAL BAR

A petitioner must fully exhaust state remedies before seeking federal habeas relief. 28 U.S.C. § 2254(b). To exhaust under § 2254, a petitioner must fairly present the factual and legal basis of any claim to the highest available state court for review prior to raising it in federal court. *See Deters v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993); *Richardson v. Procunier*, 762 F.2d 429, 432 (5th Cir.1985); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir.1982). In Texas, a prisoner must present his claim to the Texas Court of Criminal Appeals in a petition for discretionary review (PDR) or an application for writ of habeas corpus. *See Bautista v. McCotter*, 793 F.2d 109, 110 (5th Cir. 1986); *Richardson*, 762 F.2d at 432. A petitioner must present his claims in a procedurally correct manner as well. *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001); *Deters*, 985 F.2d at 795.

Petitioner's first state habeas application was dismissed because the appellate mandate had not been issued and the conviction was not final when he filed his state application. (*See* doc. 17-4.) The Texas Court of Criminal Appeals does not have jurisdiction to consider a state habeas application until after the judgment of conviction becomes final. *Larry v. Dretke*, 361 F.3d 890, 894 (5th Cir. 2004) (citing *Ex parte Johnson*, 12 S.W.3d 472, 473 (Tex. Crim. App. 2000)). When a defendant appeals a judgment of conviction, the judgment does not become final until the court of appeals issues the mandate. *Id.* Petitioner's first state habeas application, which was filed before the mandate was issued, did not present claims in a procedurally correct manner. *See Larry v. Dretke*, 361 F.3d at 896 (state habeas application that was filed before mandate issued was not properly filed). His claims were not exhausted by the first state habeas application. *See Beazley v. Johnson*, 242 F.3d at 263.

7

### A. **Impeachment of Complainant - Understanding**

Petitioner contends counsel failed to impeach the complainant by asking whether she understood the nature of sex. (*See* doc. 4 at 8.) In the context of a sexual assault, consent is not effective "if the actor knows that as a result of mental disease or defect the other person is at the time of the sexual assault incapable either of appraising the nature of the act or resisting it." Texas Penal Code § 22.011(b)(4); *see Williams v. State*, 2014 WL 1010074 at 3.

Petitioner did not raise this claim on appeal, (*see* docs. 17-1, 17-3), or in his second or third state habeas applications, (*see* docs. 17-10, 17-12). This claim is therefore unexhausted.

In addition, this claim is procedurally barred from federal habeas review. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). The normal rule that a state court must explicitly apply a procedural bar to preclude federal review does not apply to those cases where a petitioner has failed to exhaust his state court remedies, and the state court to which he would be required to present his unexhausted claims would now find those claims to be procedurally barred. *Id*. In those cases, the federal procedural default doctrine precludes federal habeas corpus review. *Id*.; *see also Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997) (finding unexhausted claim that would be barred by the Texas abuse-of-the-writ doctrine if raised in a successive state habeas petition, to be procedurally barred). Here, if Petitioner brought his unexhausted claim in a subsequent state habeas corpus application, the Court of Criminal Appeals would consider these claims to be procedurally defaulted as a successive state habeas application under Article 11.07 § 4 of the Texas Code of Criminal Procedure. This claim is therefore procedurally barred from federal habeas review.

### B. **No Objection to Testimony**

Petitioner contends that counsel failed to object to testimony of the complainant and her

mother. (*See* doc. 4 at 11, 14.) He did not raise this claim on appeal (*see* docs. 17-1, 17-3) or in his second or third state habeas applications (*see* docs. 17-10, 17-12). This claim is therefore unexhausted. He would be barred from raising this claim in a successive state habeas application, so his claim is also procedurally barred from federal habeas review. *See Nobles v. Johnson*, 127 F.3d at 423.

C.  **Subpoena Tapes of Interrogation**

Petitioner contends counsel failed to subpoena tapes of his interrogation by a detective. (*See* doc. 4 at 9.) He did not raise this claim on appeal (*see* docs. 17-1, 17-3) or in his second or third state habeas applications (*see* docs. 17-10, 17-12). This claim is therefore unexhausted. He would be barred from raising this claim in a successive state habeas application, so his claim is also procedurally barred from federal habeas review. *See Nobles v. Johnson*, 127 F.3d at 423.

## IV.  INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner claims that his trial counsel was ineffective for failing to (1) impeach the complainant after she committed perjury; (2) subpoena the complainant's sister; (3) have a defense strategy; (4) subpoena an expert; (5) request a more recent evaluation of the complainant; (6) object to testimony from the complainant and her mother; (7) present exculpatory Facebook evidence, and (8) subpoena tapes of Detective Lopez's interrogation of Petitioner .

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective

assistance of counsel, a petitioner must show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See Strickland*, 466 U.S. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A petitioner must "affirmatively prove prejudice." *Id.* at 693. The prejudice component "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96. One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are insufficient to obtain federal habeas relief. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *United States v. Daniels*, 12 F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

**A. Impeachment of Complainant - Post-assault communication**

Petitioner contends that the complainant falsely testified that she did not communicate with him by text messaging or through Facebook after the assault occurred. He asserts counsel failed to impeach her by showing that she did communicate with him after the assault. (*See* doc. 4 at 8-9).

The complainant testified on direct examination that she did not communicate with Petitioner by text or Facebook after the assault, and counsel emphasized that on cross-examination. (*See* doc. 16-5 at 68, 90-91.) The offense occurred in March 2011, while the complainant's mother was away on a trip for about five days. When she came home, the complainant told her about the assault. (*See* doc. 16-5 at 31-32). The next day, on March 16, 2011, the mother took the complainant to the hospital. (*See id.* at 33, 100.) Detective Joslyn Lopez testified on direct examination that Petitioner's cell phone showed that the complainant sent him a text message on March 14, 2011 asking how he was doing, and counsel emphasized that on cross-examination. (*See* doc. 16-5 at 137, 141.) Counsel argued to the jury to consider why she would text Petitioner on March 14 and inquire how he was doing, if the offense had occurred on March 11 as alleged. (*See* doc. 16-6 at 30-31.) Contrary to Petitioner's assertion, counsel presented and argued evidence that the complainant contacted Petitioner after the alleged offense. Petitioner does not show that there was any other evidence counsel should have presented to contradict the complainant's testimony about post-assault communication with Petitioner. He has not shown that the state court's rejection of this claim was unreasonable.

**B. Complainant's Sister**

Petitioner asserts the complainant's sister was with her when the assaults allegedly occurred. He contends counsel failed to subpoena the complainant's sister, who would have noticed if he had

11

committed the offense, and who told the mother that everything was fine. (*See* doc. 4 at 4.)

Claims of uncalled witnesses are not favored in habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy, and because allegations of what a witness would have stated are largely speculative. *Day v. Quarterman*, 566 F3d 527, 538 (5th Cir. 2009). To prevail on an ineffective assistance claim based on counsel's failure to call a witness, a petitioner must name the witness, demonstrate that the witness was available to testify and would have, set out the content of the proposed testimony, and show that the testimony would have been favorable to a particular defense. *Day v. Quarterman*, 566 F.3d at 538.

Petitioner has not shown that the sister was available to testify and would have testified. He has not shown the substance of her proposed testimony and that it would have been favorable. While the mother was away from home on the trip, she received a text message from Petitioner asking if she was going to press charges. The mother called home, and the sister said that everything was fine. (*See* doc. 16-5 at 30-31.) Petitioner does not allege that the sister would have contradicted the complainant's testimony that Petitioner took her to the park and assaulted her or that he took her into the mother's bedroom and assaulted her. He also does not allege that the sister would have contradicted his own recorded statement that he engaged in foreplay with the complainant.

Counsel argued that the complainant testified that the sister was in the living room when the assault in the bedroom occurred. He argued that the sister would have heard if the complainant had resisted. He asked the jury why the State did not present the sister as a witness. (*See* doc. 16-6 at 29.) Petitioner has not overcome the presumption that counsel's failure to call the sister as a witness was sound strategy. He has not shown that the state court's rejection of this claim was unreasonable.

12

**C. Expert Witness**

Petitioner contends counsel failed to obtain and present an expert witness who could have testified that the complainant was not mentally disabled and was able to consent to sex. (*See* doc. 4 at 19.)

Petitioner has not identified any expert witness, shown the substance of the testimony of any such expert, or shown that such testimony would have been favorable. *See Day v. Quarterman*, 566 F.3d at 538. His conclusory claim does not show that the state court's rejection of this claim was unreasonable. *See Miller v. Johnson*, 200 F.3d at 282.

**D. Evaluation of Complainant**

Petitioner contends that counsel failed to request a more recent evaluation of the complainant to show her level of understanding about the nature of sex and her ability to consent. (*See* doc. 4 at 19.)

Petitioner does not allege what an evaluation of the complainant would have shown, and he does not show that any such evaluation would have assisted his defense. His conclusory claim does not show that the state court's rejection of this claim was unreasonable. *See Miller v. Johnson*, 200 F.3d at 282.

**E. Facebook Evidence**

Petitioner asserts counsel did not present Facebook evidence that would have shown that his involvement with the complainant was consensual and was established long before the mother left for the trip.[2] (Doc. 3 at 6.)

He does not allege the substance of any Facebook evidence counsel should have presented

---

[2] Respondent argues that the claim regarding the failure to present exculpatory Facebook evidence is unexhausted. Petitioner presented this claim in his second state habeas application, and it is exhausted. (*See* doc. 17-10 at 10, 31-32.)

13

at trial, and he does not show that any such evidence would have been favorable to the defense. His conclusory claim does not show that the state court's rejection of this claim was unreasonable. *See Miller v. Johnson*, 200 F.3d at 282.

**F.  Strategy**

Petitioner contends counsel did not have a strategy because he did not focus on whether Petitioner used deception, coercion, or force. (*See* doc. 4 at 7.) His conclusory claim does not show that the state court's rejection of this claim was unreasonable. *See Miller v. Johnson*, 200 F.3d at 282.

As discussed, consent in the context of sexual assault is not effective "if the actor knows that as a result of mental disease or defect the other person is at the time of the sexual assault incapable either of appraising the nature of the act or resisting it." Texas Penal Code § 22.011(b)(4); *see Williams v. State*, 2014 WL 1010074 at 3. The use of deception, coercion, or force is not relevant to show whether consent is effective under that statute. Petitioner has not shown that counsel's failure to focus on deception, coercion, or force was unsound strategy. He has not overcome the presumption of sound strategy, and he has not shown that the state court's rejection of this claim was unreasonable.

## IV.  EVIDENTIARY HEARING

Upon review of the pleadings and the proceedings held in state court as reflected in the state court records, an evidentiary hearing appears unnecessary.

## V.  RECOMMENDATION

The petition for habeas corpus relief under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**SO ORDERED** this 13th day of February, 2017.

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE